UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

KETURAH TAWANA MIXON,                    Case No. 22-01931-swd
                                         Chapter 7
                    Debtor.              Hon. Scott W. Dales

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

With two civil proceedings and one criminal case, chapter 7 debtor Keturah Tawana Mixon (the "Debtor" or "Ms. Mixon"), creditor Bank of America, N.A. ("BANA"), and chapter 7 trustee Thomas C. Richardson, Esq. (the "Trustee") have found themselves in the middle of a three-ring circus without a ringmaster.[1]

The current act in this circus, involving the juggling of competing interests in a settlement payment that BANA is prepared to make, took place in Kalamazoo, Michigan, on March 19, 2024, when the court conducted the adjourned hearing on the Trustee's Motion for Turnover (ECF No. 64, the "Motion"). Ms. Mixon and her non-debtor husband appeared at the hearing without counsel; the Trustee, BANA, the United States Trustee, and the United States of America all appeared through counsel. The hearing took place pursuant to the court's Order dated Feb. 26, 2024 (ECF No. 73) which endeavored to frame the issues for decision.

---

[1] In the first of the three proceedings, the "Civil Action" pending before the Honorable Janet T. Neff and captioned *Bank of America N.A. v. Mixon et al.*, Case No. 1:21-cv-430, BANA sought to quiet title in the real estate commonly known as 243 Devon Road, Battle Creek, MI (the "Real Estate"), and foreclose Ms. Mixon's mortgage under M.C.L. § 600.3101 *et seq*. Ms. Mixon commenced the second civil proceeding -- the current chapter 7 "Bankruptcy Case." In the third proceeding -- the "Criminal Action" -- Ms. Mixon and her husband (Antonio) have been convicted based on their guilty pleas in *United States v. Mixon*, Case No. 1:21CR203, and now must make restitution under title 18, United States Code.

At the conclusion of the hearing, the court gave a bench ruling expressing its intent to grant the Motion for reasons stated on the record, and now offers this Memorandum of Decision and Order to supplement the rationale for that decision.

During the hearing, counsel for the United States shared the Memorandum Opinion and Order of the Honorable Jane M. Beckering, dated March 18, 2024 (the "March 18 Opinion," ECF No. 173 in the Criminal Action).  Judge Beckering is presiding over the criminal prosecution of Ms. Mixon and her husband (the "Mixons"), and she issued the March 18 Opinion to address the relationship between Ms. Mixon's criminal restitution obligation -- the subject of two Writs of Continuing Garnishment (the "Writs") in the Criminal Action -- and her bankruptcy estate.  More specifically, the United States served the Writs on BANA to compel the bank to remit the $50,000.00 payment that BANA agreed to pay Ms. Mixon and her husband to settle BANA's foreclosure and quiet title claims in the Civil Action.[2]  Under the terms of the settlement, which Judge Neff recently upheld against the Mixons' challenges, BANA agreed to make two $25,000.00 payments, the first upon execution of formal settlement documents, and the second upon the Mixons' voluntary surrender of the Real Estate to BANA or its agents to permit BANA to foreclose by advertisement under M.C.L. § 600.3201 *et seq*.

In the March 18 Opinion, Judge Beckering found that Ms. Mixon is entitled (in the first instance) to half of the total settlement payment from BANA, evidently given her interest in the Real Estate.  In making this decision, the criminal court naturally viewed the Real Estate as the origin of the right to the settlement payments, since the competing claims to the Real Estate were the principal subjects of the Civil Action.  So, according to Judge Beckering's recent decision, Ms. Mixon's share of the first installment is $12,500.00.  Judge Beckering ordered BANA to hold the

---

[2] In essence, the settlement amount compensates Ms. Mixon for waiving her redemption and possessory rights in the property.

funds, however, pending further order in the Criminal Action, to give the parties an opportunity to settle their dispute, or allow this court to determine whether or to what extent the payment is included within Ms. Mixon's bankruptcy estate.

At the adjourned hearing in the Bankruptcy Case on the Trustee's Motion, counsel for the United States stated that her client holds a lien on the settlement payments from BANA (to secure the Mixons' restitution debt arising out of the Criminal Action), and the right to disregard the Bankruptcy Case altogether, under 18 U.S.C. § 3613 and *United States v. Robinson (In re Robinson)*, 764 F.3d 554 (6th Cir. 2014). Nevertheless, counsel stated the government's agreement to have BANA remit the settlement payments to the Trustee for distribution through the Bankruptcy Case pursuant to the Bankruptcy Code.  In response to the court's question, the government's counsel confirmed that Ms. Mixon would get credit toward her restitution obligation for each dollar the Trustee pays to any beneficiary of Judge Beckering's restitution award through the Bankruptcy Case.

For its part, BANA (as stakeholder) was indifferent about who should receive the first $12,500.00 settlement installment, so long as its payment was not viewed (by the various courts) as being inconsistent with the settlement agreement or the Writs.  Because Mr. Mixon's share of the settlement was not in issue during the hearing, he also took no position.

The Trustee continued to argue in support of his Motion, contending that the settlement payments represented proceeds of a pre-bankruptcy dispute involving Ms. Mixon or proceeds of her interests in the Real Estate which everyone appeared to agree should be included within the bankruptcy estate.  *See* 11 U.S.C. § 541(a)(1) and (a)(6).

Ms. Mixon, however, opposed the Motion for turnover, arguing that the settlement with BANA was not enforceable for a variety of reasons that Judge Neff previously rejected and this

court previously stated it would not revisit. Ms. Mixon also suggested at several points during the Bankruptcy Case that the Trustee should simply liquidate the Real Estate. At no point in connection with this contested matter, however, did she either challenge the premise that her share of the Real Estate was included within the bankruptcy estate, or argue that the court should resolve the matter through an adversary proceeding (despite the court's suggestion of that possibility in the Order dated Feb. 26, 2024).[3] Under the circumstances, and with the benefit of Judge Beckering's March 18 Opinion, the court announced its decision to grant the Motion with respect to the first installment, subject to Judge Beckering's superintending control through the Writs.

This court has several reasons for its decision to require BANA to turnover the installment payment to the Trustee. First, the United States consented to the turnover on the record on March 19, 2024. As between Ms. Mixon and the United States, the latter has the stronger claim to the settlement payment. There is no factual or legal dispute on that crucial point.

Second, after reviewing the Memorandum of Settlement (attached as part of ECF No. 64) the court finds that the settlement payment represents compensation for waiving redemption rights and her challenge to BANA's mortgage encumbering the Real Estate, which prompted BANA to commence the foreclosure and quiet title action. Moreover, Judge Beckering's allocation of the settlement payments between husband and wife based, in part, on Michigan's treatment of entireties property under M.C.L. § 557.71, also points in that direction. *See* March 18 Opinion at p. 3 (ECF No. 173 in the Criminal Action). The Real Estate that BANA sought to foreclose, after all, was real estate which Ms. Mixon shared with her husband and had, at least, possessory and redemption rights (as mortgagor under the purchase money mortgage at issue and M.C.L.

---

[3] After raising the issue in last month's order and hearing nothing in response, the court regards the parties as having waived any right to resolve this issue through an adversary proceeding, rather than the contested matter the Trustee initiated by filing his Motion. The incremental procedural protections of an adversary proceeding offer little benefit at considerable costs, considering the interests currently at stake.

600.3240). Again, Judge Beckering set the value of her share at $12,500.00. Because the settlement resolved the quiet title and foreclosure controversy in the Civil Action, the court regards the settlement payment as proceeds of Ms. Mixon's prepetition interests in the Real Estate, included within the estate under 11 U.S.C. § 541(a)(6). The court perceived no legal or factual challenge to these conclusions during the hearing. Indeed, no one, including Ms. Mixon, requested an evidentiary hearing.[4]

As noted above, as between the United States and Ms. Mixon, the United States has the stronger claim to the settlement payment under title 18 and the Writs -- another point of apparent agreement. The government unequivocally expressed its agreement with the Trustee to dedicate the $12,500.00 settlement fund to the bankruptcy estate, bringing the first installment payment within the estate under 11 U.S.C. § 541(a)(7) to the extent not already included under (a)(6).

Because this court has no authority or appetite to second-guess the decisions of Judge Neff (with respect to the binding effect of the settlement) and Judge Beckering (with respect to the Writs), and because the record supports including the settlement payment within the bankruptcy estate, the court asked the Trustee to prepare an order (with a signature from the Assistant U.S. Attorney), directing BANA to remit the first settlement payment to the Trustee. That yet-to-be-submitted order, rather than today's Memorandum of Decision and Order, will be the order or judgment triggering the time to seek reconsideration or appellate review of the decision to grant the Motion.

Finally, the court understands that, after the court formally grants the Motion, the United States will withdraw the Writs as they pertain to Ms. Mixon's share of the settlement payment,

---

[4] The court notes that the costs of conducting an evidentiary hearing would easily consume the benefit to Ms. Mixon, the estate, and creditors flowing from the $12,500.00 settlement payment. This may explain why the parties did not seek to offer evidence beyond the courts' records. Fed. R. Evid. 201.

freeing the payment from the government's lien under title 18 so the Trustee can administer the property.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee shall submit an order conforming to this Memorandum of Decision and Order and the court's bench ruling and bearing the signature of counsel for the United States.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor (by first class U.S. Mail), Antonio Mixon, the United States of America, Thomas C. Richardson, Esq., Bank of America, N.A., and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated March 20, 2024**



Scott W. Dales
United States Bankruptcy Judge